1  JOHN J. SHAEFFER (SBN 138331)
        JShaeffer@FoxRothschild.com
2  BENJAMIN MCCOY (*PRO HAC VICE*)
        BMcCoy@FoxRothschild.com
3  FOX ROTHSCHILD LLP
   10250 Constellation Blvd, Suite 900
4  Los Angeles, CA 90067
   Telephone: 310.598.4150
5  Facsimile: 310.556.9828

6  Attorneys for Plaintiff
   BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, A DIVISION OF
7  HEALTH CARE SERVICE CORPORATION

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        SOUTHERN DIVISION

11

12  BLUE CROSS AND BLUE SHIELD OF        Case No. 2:24-cv-10683-MWC-AJR
    OKLAHOMA, a division of HEALTH
    CARE SERVICE CORPORATION, a         Hon. Michelle Williams
13  Mutual Legal Reserve Company,
                                        **RESPONSE IN OPPOSITION TO**
14                      Plaintiff,       **MOTION TO DISMISS OF**
                                        **DEFENDANT SOUTH COAST**
15        v.                            **BEHAVIORAL HEALTH LLC**
                                        **(DKT 50)**
16  SOUTH COAST BEHAVIORAL
    HEALTH LLC; EXCELLENCE
17  RECOVERY, LLC; EVERYTHING IN        Hearing Date: June 6, 2025
    EXCELLENCE RECOVERY LLC;            Time: 1:30 p.m.
18  CARI PASSMORE; RAD LIFE             Judge: Michelle Williams
    RECOVERY, LLC; BRETT PERSHALL;      Courtroom: 6A
19  RANDALL EISWORTH;

20                      Defendants.

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Page

I.    INDUSTRY BACKGROUND ............................................................2

II.   THE BCBSOK ACA EXCHANGE PLAN .....................................2

III.  DEFENDANTS' FRAUDULENT SCHEME ..................................3

      A.    SCBH Contracted with Body Broker Defendants to Find
            Potential Patients and Entice Them Into Treatment. ..................3

      B.    SCBH and Body Broker Defendants Conspired with Eisworth to
            Fraudulently Enroll Patients ......................................................4

      C.    SCBH and Body Broker Defendants Provided Kickbacks to
            Patients During Inpatient Care and Outpatient Treatment ..........5

      D.    SCBH Conspired with Body Broker Defendants Passmore, EIE,
            ad Excellence Recovery to Further Their Scheme and Maximize
            the Time Spent in Rehab ............................................................5

IV.   FRAUD IS PLEAD WITH SUFFICIENT SPECIFICITY ...................6

      A.    The FAC Adequately Identifies the Circumstances Constituting
            Fraud So That SCBH Can Respond .............................................6

            1.    For Allegations of Healthcare Fraud, Rule 9(b) Requires
                  the Identification of Each Defendants' Role and
                  Prediscovery Support ........................................................6

            3.    Each Defendants' Role in the Schemes is Adequately
                  Identified ..........................................................................8

            4.    There is Substantial Prediscovery Evidence of Fraud .......9

      B.    SCBH's Arguments Confirm they Are on Notice of the
            Misconduct Alleged and Can Respond ....................................11

            1.    The "Who" is Adequately Alleged ...............................11

            2.    SCBH Could Not Lie on Claim Forms............................12

            3.    The FAC Sufficiently Alleges the Nature of the Kickback
                  Scheme ............................................................................13

            4.    SCBH Directed and Was Aware of Fraudulent
                  Enrollments ....................................................................16

V.    BCBSOK ADEQUATELY PLEADS ITS RICO CLAIMS (COUNTS
      II AND III) ....................................................................................16

      A.    The FAC Pleads an Enterprise by Identifying Multiple
            Alternative Associations-in-Fact ..............................................17

-i-

B.    The FAC Adequately Alleges RICO Predicate Acts.................19

VI.    RULE 9(B) IS INAPPLICABLE TO THE NON-FRAUD COUNTS 20

VII.    IF ANY CLAIMS ARE NOT ADEQUATELY PLEAD,
AMENDMENT WOULD CURE ANY DEFICIENCIES .................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*,
  No. 19-05395, 2022 WL 889058 (D. Ariz. Mar. 25, 2022) ................................ 7

*Aetna Life Ins. Co. v. Young*,
  No. 23-09654, 2024 WL 5182638 (C.D. Cal. September 25, 2024) ....... 9, 10, 18

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ............................................................. 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 5, 6

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ........................................................ 14

*Boyle v. United States*,
  556 U.S. 938 (2009) ....................................................................... 17

*Brown v. Stored Value Cards, Inc.*,
  953 F.3d 567 (9th Cir. 2020) .......................................................... 20

*Bruns v. Ledbetter*,
  583 F. Supp. 1050 (S.D. Cal. 1984) ................................................ 17

*Davidowitz v. Delta Dental Plan of California, Inc.*,
  946 F.2d 1476 (9th Cir. 1991) .......................................................... 4

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ........................................................................... 6

*U.S. ex rel. Gagne v. City of Worcester*,
  565 F.3d 40 (1st Cir. 2009) ............................................................ 11

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) ........................................................... 7

BCBSOK'S RESPONSE TO MOTION TO DISMISS OF SOUTH COAST BEHAVIORAL HEALTH, LLC

*Hawthorne v. Bennington*,
   No. 16-00235, 2020 WL 3884426 (D. Nev. July 8, 2020) ................................. 6

*Heber v. Toyota Motor Sales, U.S.A., Inc.*,
   823 F. App'x 512 (9th Cir. 2020) ................................................................. 11

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) .................................................................... 11

*Matilock, Inc. v. Pouladdei*,
   No. 20-01186, 2020 WL 3187198 (N.D. Cal. June 15, 2020) .......................... 20

*Moses v. Innoprise Software*,
   No. 12-05271, 2013 WL 6019536 (N.D. Cal. Nov. 13, 2013) .......................... 6

*In re Netopia, Inc., Sec. Litig.*,
   No. 04-03364, 2005 WL 3445631 (N.D. Cal. Dec. 15, 2005) .......................... 6

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .......................................................................... 7

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
   No. 13-2378, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) ........................ 7, 9

*In re Out-of-Network Substance Use Disorder Claims Against
   UnitedHealthcare*,
   2023 WL 2808747 (C.D. Cal. Jan. 13, 2023) ............................................ 14, 16

*Painters & Allied Trades Dist. Council 82 Health Care Fund v.
   Takeda Pharms. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019) .................................................................... 17

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ...................................................................... 19

*Sec. & Exch. Comm'n v. Daifotis*,
   No. 11-00137, 2011 WL 4714250 (N.D. Cal. Oct. 7, 2011) ............................ 6

*Skillz Platform Inc. v. AviaGames Inc.*,
   No. 21-02436, 2023 WL 8040871 (N.D. Cal. Nov. 20, 2023) .......................... 16

*State Comp. Ins. Fund v. Khan*,
   No. 12-01072, 2013 WL 12132027 (C.D. Cal. July 30, 2013) ................. 7, 9, 10

BCBSOK'S RESPONSE TO MOTION TO DISMISS OF SOUTH COAST BEHAVIORAL HEALTH, LLC

*United States ex rel. STF, LLC v. Vibrant Am., LLC,*
 No. 16-02487, 2020 WL 4818706 (N.D. Cal. Aug. 19, 2020) .................... 11, 13

*United States ex. rel. Swoben v. United Healthcare Ins. Co.,*
 848 F.3d 1161 (9th Cir. 2016)................................................................. 6, 14

*Tatung Company, Ltd. V. Shu Tze Hsu,*
 217 F.Supp.3d 1138 (C.D. Cal. 2016)............................................................ 18

*U.S. v. Winslow,*
 962 F.2d 845 (9th Cir. 1992) ...................................................................... 19

*United States v. Christensen,*
 828 F.3d 763 (9th Cir. 2015) ...................................................................... 18

*United States v. Crescendo Bioscience, Inc.,*
 No. 16-02043, 2020 WL 2614959 (N.D. Cal. May 23, 2020).............. 11, 13, 14

*United States v. Harkonen,*
 510 F. App'x 633 (9th Cir. 2013)................................................................. 12

*United States v. Orthopedic All., LLC,*
 No. 6-3966, 2020 WL 8173025 (C.D. Cal. Nov. 19, 2020)............................ 10

*United States v. Perrin,*
 580 F.2d 730 (5th Cir. 1978) ...................................................................... 20

*United States v. Rafiekian,*
 991 F.3d 529 (4th Cir. 2021) ...................................................................... 14

*United States v. Turkette,*
 452 U.S. 576 (1981) ............................................................................. 17, 19

*United States v. Vernon,*
 723 F.3d 1234 (11th Cir. 2013) ................................................................... 14

*United States ex rel. Vatan v. QTC Med. Servs., Inc.,*
 721 F. App'x 662 (9th Cir. 2018).................................................................. 11

*Westways World Travel v. AMR Corp.,*
 182 F. Supp. 2d 952 (C.D. Cal. 2001)........................................................... 18

*State ex rel. Wilson v. Superior Ct.,*
 174 Cal. Rptr. 3d 317 (Ct. App. 2014)........................................................... 13

-iii-

*In re ZF-TRW Airbag Control Units Products Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ................................................................. 17

**Statutes**

18 U.S.C. § 1341 ..................................................................................................... 19

18 U.S.C. § 1343 ..................................................................................................... 19

18 U.S.C. § 1961(4) ................................................................................................ 17

18 U.S.C. § 1962(c) ................................................................................................ 18

74 OK Stat § 3404 .................................................................................................. 20

Cal. Health & Safety Code § 445 ........................................................................... 20

Cal. Health & Safety Code § 11831.6 ..................................................................... 20

Cal. Health & Safety Code § 11831.65(b)(3) .......................................................... 15

Cal. Ins. Code § 750 ............................................................................................... 20

Cal. Ins. Code § 1871.4 .......................................................................................... 20

Cal. Ins. Code § 1871.7 .......................................................................................... 20

Cal. Penal Code § 549 ............................................................................................ 20

Cal. Penal Code § 550 ............................................................................................ 13

ACA, 42 U.S.C. 18001 *et seq.* ........................................................................ 2, 3, 15

RICO, 18 U.S.C. §§ 1961-68 ............................................................. 16, 17, 18, 19

Travel Act, 18 U.S.C. § 1952 ........................................................................... 19, 20

**Other Authorities**

8545 Am. Jur. Trials 113 ........................................................................................ 18

Fed. R. Civ. P. 8 ....................................................................................................... 6

Fed. R. Civ. P. 9(b) ........................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

-iv-

**<u>Table of Parties</u>**

| Pl. | Blue Cross and Blue Shield of Oklahoma | "BCBSOK" or "Plaintiff" |
|---|---|---|
| Def. | South Coast Behavioral Health LLC | "SCBH" |
| Def. | Excellence Recovery LLC | "Excellence" |
| Def. | Everything in Excellence LLC | "EIE" |
| Def. | Rad Life Recovery, LLC | "Rad Life" |
| Def. | Cari Passsmore | "Passmore" |
| Def. | Brett Pershall | "Pershall |
| Def. | Randall Eisworth | "Eisworth" |

**<u>Categories of Defendants</u>**

| "Treating Entity Defendants" | SCBH and Excellence Recovery |
|---|---|
| "Body Brokering Defendants" | EIE, Rad Life, Passmore, Pershall |
| "Insurance Agent Defendant" | Eisworth |

# INTRODUCTION

SCBH purports to provide treatment services to individuals suffering from substance-use disorder ("SUD"). Since at least 2021, SCBH conspired with the co-defendants to target Oklahoma residents and BCBSOK health benefit plans through a series of fraudulent acts to reap over $36 million in wrongful payments.

As explained in the First Amended Complaint ("FAC"), SCBH utilized body brokers to hunt down individuals suffering from SUD and get them in treatment. Defendants specifically targeted Oklahoma because of (i) the large population of Oklahoma residents suffering from SUD, and (ii) the robust benefits available to Oklahoma residents under BCBSOK individual health benefit plans.

Defendants' problem was that most individuals they found were not enrolled in BCBSOK plans. So, Body Broker Defendants worked with Insurance Agent Defendant to fraudulently enroll patients in BCBSOK plans, falsifying information such as financial status to qualify for BCBSOK plans while avoiding less-valuable Medicaid plans. The patients were then shipped across the country and given kickbacks in the form of free transportation, free treatment, and free housing to ensure SCBH could bill BCBSOK as long as possible. Body Broker Defendants received kickbacks in the form of bed vouchers and cash payments. The FAC identifies all the resulting fraudulent healthcare claims, walks through how specific patients were moved through the scheme, describes the relationship amongst Defendants, and contains numerous supporting facts such as operational details, text messages, and social media posts.

One would know none of this reading SCBH's Motion. Unable to address what is actually alleged, SCBH ignores most of it, mischaracterizes the rest, and resorts to prematurely arguing affirmative defenses. But what SCBH cannot dispute is that the FAC sets forth each Defendants' role, the categories of misconduct involved, and puts SCBH on notice sufficient to formulate a response. Courts in this District have denied motions to dismiss on far less. This Court should do the same.

## FACTUAL BACKGROUND

### I.    INDUSTRY BACKGROUND

BCBSOK administers or insures health benefits plans for the government, employers, and private individuals. Particularly relevant here, BCBSOK was the primary insurer in Oklahoma offering individual health plans pursuant to the Patient Protection and Affordable Care Act ("ACA"). FAC ¶ 26. To obtain payment for services rendered to BCBSOK members, healthcare providers submit standard healthcare "claim forms" representing certain information about the patients and services provided to respective BCBSOK members.[1] *Id.* ¶¶ 28-29. BCBSOK, like others in the industry, relies upon providers to submit accurate information, make truthful representations, and include all material information when submitting claim forms to determine coverage and payment. *Id.* ¶ 31. To that end, providers certify that they follow all applicable laws and that the information on the claim forms is accurate and complete. *Id.* ¶ 32.

### II.    THE BCBSOK ACA EXCHANGE PLAN

The ACA created insurance marketplace exchanges through which individuals (among others) can enroll in privately insured health benefit plans. *Id.* ¶ 34. During the relevant time here, BCBSOK offered various statewide health benefit plans in Oklahoma on the Federal Health Insurance Exchange, located at healthcare.gov. *Id.* ¶ 35. To apply, individuals fill out an application containing personal information. While the exchange can verify some basic statements in applications (e.g., social security number), it is unable to do so for all statements. *Id.* ¶ 37. There are three relevant components of the application here, none of which can be verified by an exchange:

- *Open enrollment and Qualifying Events*: The limited time during each year (typically November through mid-December or January) when a

---

[1] Exhibit 1 of SCBH's Motion provides a link to and copy to one of these claim forms. *See* Mot. (Dkt. 50) at 36-37.

member can enroll in ACA Plans. One can only enroll outside that time frame if they suffer a "qualifying event," such as termination of other plan coverage.

- *Residency*: Applicants must be residents of Oklahoma and remain so during the term of the plan. Coverage terminates if one moves outside the service area.

- *Annual Income*: Annual income determined the type of plan a member could enroll in and the extent of premium assistance they could obtain. *Id.* ¶ 42. However, one's annual income could not be too low, or they would be eligible for Oklahoma's Medicaid plan (SoonerCare), which was not acceptable to SCBH because SoonerCare reimburses at cost and does not provide out-of-state coverage except in limited circumstances. Conversely, the BCBSOK plans provided robust out-of-state coverage. Thus, Defendants represented that the applicants' incomes were within a specific range to avoid SoonerCare while qualifying for BCBSOK Plans. *Id.* ¶¶ 38-44.

## III. DEFENDANTS' FRAUDULENT SCHEME

### A. SCBH Contracted with Body Broker Defendants to Find Potential Patients and Entice Them Into Treatment

Led by its marketing directors (J.E. and A.H.), SCBH contracted with Body Broker Defendants to find potential patients and entice them into treatment at SCBH. *Id.* ¶¶ 59-60. The FAC details the methods of patient recruitment and contains screenshot examples of social media outreaches. *Id.* ¶¶ 63-64. Potential patients were promised that in return for coming to SCBH, they would be given free transportation, provided with lodging after detox, and guaranteed they would not have to pay for

treatment.[2] *Id.* ¶¶ 84-85. As explained below, the body broker that found a patient was then given a bed voucher for the patient, which gave them the right to later house the patient after detox and receive a cut of insurance payments. *Id.* ¶ 85.

## B. SCBH and Body Broker Defendants Conspired with Eisworth to Fraudulently Enroll Patients

Many of the potential patients did not have active plans at the time they were found or had a Medicaid-type plan that would not give SCBH the profit it desired. *Id.* ¶ 64. As such, Defendants endeavored to enroll the individuals in BCBSOK plans using false financial and other information, such as fake addresses or "qualifying events." *See, e.g.*, *id.* ¶¶ 70-76. Indeed, over two-thirds of the individuals who treated at SCBH were enrolled outside open enrollment and started treatment within days of their plan becoming effective, if not the same day. *Id.* ¶ 65. The FAC even contains a text message where Body Broker Defendant Passmore plots to use a P.O. Box address she controls to enroll a patient in health benefits plan. *Id.* ¶ 66.

Body Broker Defendants utilized Insurance Agent Defendant to do the enrollment. *Id.* ¶¶ 68-69. They often then seized control of the plans by changing the mailing addresses to those of houses and locations they controlled. *See id.* ¶ 71. For example, 23 BCBSOK members had an address matching that of Excellence Recovery, which Defendant Passmore owned and operated. *Id.* Many others had the address for SCBH's location at 2220 University Drive, Newport Beach, CA. *Id.* Still others had addresses associated with separate treatment centers that Pershall owns, operates, or is associated with at 7861 Daisy Circle, Huntington Beach, CA 92648 or 16092 Feltham Circle, Westminster, CA 92683. *Id.*

---

[2] That is, the patients would not have to pay any cost-share under their plans. As the courts and government agencies have explained, cost-share is an important component of plans that acts to sensitize individuals to healthcare costs so that they make the most of their treatment in a cost-effective manner. *See, e.g.*, *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 699 (9th Cir. 1991) (cost share "sensitize[s] employees to the costs of health care, leading them not only to use less but also to seek out providers with lower fees ....[which] makes medical insurance less expensive and enables employers to furnish broader coverage (or to pay higher wages coupled with the same level of coverage.")).

### C. **SCBH and Body Broker Defendants Provided Kickbacks to Patients During Inpatient Care and Outpatient Treatment**

During inpatient care, Defendants provided kickbacks to patients in the form of free treatment. Some patients also had their plan premiums paid for by Body Broker Defendants. *Id.* ¶¶ 76, 86. After detox, Defendants enticed the patients to remain enrolled in SCBH's outpatient program by offering them free housing. *Id.* ¶¶ 83-84. As noted above, these houses were owned and operated by Body Broker Defendants. *Id.* Thus, the bed voucher Body Broker Defendants received for brokering the patient was monetized. *Id.* ¶ 85. In return, SCBH retained control of the members through the outpatient level of care so that they could continue to bill BCBSOK plans.

### D. **SCBH Conspired with Body Broker Defendants Passmore, EIE, ad Excellence Recovery to Further Their Scheme and Maximize the Time Spent in Rehab**

In many instances, patients were first transported for treatment at Excellence Recovery. *Id.* ¶ 89. Passmore then conspired with SCBH and EIE to move them to EIE houses and continue treatment at SCBH. *Id.* ¶¶ 90-92. By spreading out enrollment and treatment at a provider seemingly distinct from SCBH, Defendants SCBH, EIE, Excellence, and Passmore were able to milk further payments out of BCBSOK by making an end run around the fraud and overutilization safeguards that insurers like BCBSOK utilize to detect fraud, waste, and abuse. *Id.* ¶ 90.

### **MOTION TO DISMISS STANDARD**

In evaluating motions to dismiss, the Court must accept BCBSOK's factual allegations as true and draw all reasonable inferences in BCBSOK's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need not contain "detailed factual allegations," but it must state a "claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining plausibility, courts may use their "judicial experience and common sense." *Iqbal*, 557 U.S. at 679.

"Failure to state a claim means the rule should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint under Fed. R. Civ. P. 12(b)(6)." *In re Netopia, Inc., Sec. Litig.*, No. 04-03364, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005).

"A complaint is not a vehicle in which a plaintiff must place or allege ***every fact*** known that supports his legal claims." *Hawthorne v. Bennington*, No. 16-00235, 2020 WL 3884426, at *10 (D. Nev. July 8, 2020) (emphasis added). Nor are "specific facts" necessary. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). This holds true even under the heightened pleading standard of Rule 9(b). *See, e.g.*, *Sec. & Exch. Comm'n v. Daifotis*, No. 11-00137, 2011 WL 4714250, at *4 (N.D. Cal. Oct. 7, 2011) ("FRCP 9(b) does not require that every detail be alleged in a complaint."). Instead, a complaint need only "give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted). This standard is easily met here.

## IV. FRAUD IS PLEAD WITH SUFFICIENT SPECIFICITY

### A. The FAC Adequately Identifies the Circumstances Constituting Fraud So That SCBH Can Respond

#### 1. For Allegations of Healthcare Fraud, Rule 9(b) Requires the Identification of Each Defendants' Role and Prediscovery Support

While Rule 9(b) requires allegations regarding the "who, what, when, where, and how of the misconduct charged," *United States ex. rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016), it is "not . . . an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity." *Moses v. Innoprise Software*, No. 12-05271, 2013 WL 6019536, at *4 (N.D. Cal. Nov. 13, 2013) (quotation omitted). Indeed, "Rules 8(a) and 9(b) must be read in conjunction with one another. [A] [p]laintiff may state allegations of fraud in short, plain statements, provided that said statements put [d]efendants on adequate notice of the

conduct alleged to be fraudulent." *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co. ("ARS-Aetna")*, No. 19-05395, 2022 WL 889058, at *3 (D. Ariz. Mar. 25, 2022) (quotations omitted); *see also See Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.").

In healthcare fraud cases – where each healthcare claim represents an instance of fraud – Rule 9(b) is satisfied if "(i) the defendant has been made aware of the circumstances for which she will have to prepare a defense at trial, and (ii) th[e] plaintiff has substantial prediscovery evidence of those facts."[3] *ARS-Aetna*, 2022 WL 889058, at *3 (quotations omitted). There is no requirement that a "complaint or counterclaim lay[] out each and every misrepresentation in detail" because that "would provide less effective notice . . . than would a shorter, more generalized version." *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 13-2378, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014). Thus, courts regularly find Rule 9(b) to be satisfied where the claims are identified with sufficient detail in exhibit spreadsheets and each defendants' role in the scheme is specified. *See, e.g.*, *ARS-Aetna*, 2022 WL 889058, at *3; *Nutrishare, Inc.*, 2014 WL 1028351, at * 4; *State Comp. Ins. Fund v. Khan*, No. 12-01072, 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013) (claims chart was "sufficient to allow Defendants to file a meaningful answer to the SAC, and … therefore sufficient under Rule 9(b)").

---

[3] A frequent issue in healthcare fraud matters is that the plaintiffs – who are often individual whistleblowers – are not able to identify ***any*** healthcare claims. There is disagreement amongst the Circuits, with the Ninth Circuit holding that "[a] [plaintiff] is not required to identify representative examples of false claims to support every allegation, although the use of representative examples is one means of meeting the pleading obligation." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019). BCBSOK has met every conceivable standard here. It identifies all the claims (Exs. B-C), includes specific representative examples (Exs. D-E), and sets forth other facts indicative of the schemes.

### *3. Each Defendants' Role in the Schemes is Adequately Identified*

Paragraphs 9-16 and paragraph 58 of the FAC set forth each defendants' role in the scheme.



As to SCBH, it was the central vehicle through which fraudulent payments were obtained. *See id.* ¶ 60. It hired body brokers and paid them kickbacks in the form of bed vouchers and money. *Id.* ¶¶ 9, 59. It paid kickbacks to the patients in the form of free transportation, waived cost-shares, and free housing so they would remain under SCBH's control while their insurance was billed. *Id.* ¶¶ 80-81, 82-86. SCBH literally monetized the fraud by making the misrepresentations set forth in the claim forms

-8-

and receiving the payments, before distributing the ill-gotten gains to its co-conspirators. *Id.* ¶¶ 87-88.

In short, SCBH was the ringleader and the common actor through which all the other defendants acted and profited. Its role in the scheme is clear.

### 4. There is Substantial Prediscovery Evidence of Fraud

There is substantial prediscovery evidence to support BCBSOK's allegations. The FAC outlines the specific categories of misconduct involved (*id.* ¶¶ 59-94), *see supra* pp. 5-7, and Exhibits B and C provide detailed claims spreadsheets setting forth each claim at-issue, including "the number of claims made, a specific time period during which those claims were made, and the amount of reimbursement induced by these claims." *Nutrishare*, 2014 WL 1028351, at *4. **_This alone has been found "sufficient under Rule 9(b)._"** *Khan*, 2013 WL 12132027, at *4 (emphasis added).

Even so, the FAC goes well beyond the minimum with evidence rarely available at such an early stage of the case. Exhibits D and E contain example claim details and payments for specific patients that resulted from the fraudulent scheme. The FAC further explains how each of these patients passed through the scheme, starting with fraudulent enrollment (¶¶ *id.* 72-78), copay waivers, and free housing (*id.* ¶¶ 80-84). The unique bed voucher arrangement with Body Broker Defendants and the dual role they played in brokering and providing housing kickbacks is detailed at length, including the identities of the specific employees at SCBH responsible for the program (*id.* ¶¶ 60-62 (J.E., A.H., W.W.))  and the individuals who ultimately certified the claims (*id.* ¶ 94 (M.C. and L.R.). All of this is bolstered by social media posts (*id.* ¶¶ 63-64), text messages (*id.* ¶ 66), and the above diagram detailing how the scheme progressed from beginning to end (*id.* ¶ 58).

Courts have denied motions to dismiss in the face of similar – **_if not fewer_** – allegations. *See, e.g.*, *Aetna Life Ins. Co. v. Young*, No. 23-09654, 2024 WL 5182638, at *5 (C.D. Cal. September 25, 2024) (allegations of kickbacks, claims spreadsheets, and examples meet Rule 9(b)); *Nutrishare, Inc.*, 2014 WL 1028351, at * 2-4

(allegation of copay waivers and identification of claims sufficient to meet Rule 9(b)); *Khan*, 2013 WL 12132027, at *4 (detailed claim spreadsheets and identification of the defendants roles in the scheme sufficient). In *Young* – decided under a year ago – the Court denied a motion to dismiss involving a similar scheme, aptly reasoning that:

> Plaintiffs' exhibit identifies specific alleged frauds, and the first amended complaint's specific allegations regarding patients B.M., A.R., D.K., and R.H. are examples of how the [] Defendants participated in the alleged scheme. And the chart identifies the alleged fraudulent claims. As such, the Court is satisfied that the [] Defendants have been made aware of the particular circumstances for which [they] will have to prepare a defense as trial and have information sufficient to allow Defendants to file a meaningful answer to the first amended complaint.

2024 WL 5182638, at *5. This same reasoning applies here.

If all that were not enough (it is), BCBSOK's allegations are further bolstered by the illogical pattern born out in the claims data. Over a thousand individuals from Oklahoma enrolled in similar BCBSOK exchange plans – most through the same insurance agent – and then immediately traveled across the country to get treatment specifically at SCBH, often within days of their plan becoming effective. As the FAC alleges, and as this Court infers in BCBSOK's favor, this was not just an unexplainable anomaly. Coupled with the above allegations, it represents reliable indicia of impropriety. *See United States v. Orthopedic All., LLC*, No. 6-3966, 2020 WL 8173025, at *7 (C.D. Cal. Nov. 19, 2020) (outlier data coupled with other allegations were reliable indicia of fraud).

### B. **SCBH's Arguments Confirm they Are on Notice of the Misconduct Alleged and Can Respond**

#### 1. *The "Who" is Adequately Alleged*

SCBH argues the FAC "fails to identify a single SCBH employee or agent who provided kickbacks to defendants and BCBSOK members, knew about the fraudulent enrollment of members, falsely certified SCBH's compliance with all applicable laws, or caused the submission of fraudulent claims." Mot. (Dkt. 50) at 10:19-22. The FAC specifically identifies J.E. and A.H. as those responsible (and aware) of the kickback scheme (FAC ¶¶ 60) and identifies M.C. and L.R. as the individuals responsible for certifications (*id.* ¶ 94). It further explains the relationship between J.E. and Body Broker Defendants and how the payments often occurred via cash during onsite meetings. *Id.* ¶¶ 60-62, 68. Nothing more is required. *See, e.g.*, *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 664 (9th Cir. 2018) (Rule 9(b) satisfied by "proffer[ing] the names of individuals allegedly involved in perpetuating the purported fraud.").[4]

Indeed, later in its papers, SCBH acknowledges that J.E. is identified as the "who" and shifts to attack the kickback allegations for failing to explain whether they were for "illegal marketing (versus sober living housing)." Mot. (Dkt. 50) at 10:28-11:2. This is a puzzling argument because neither of these purposes is permissible. And "Rule 9(b) does not require a plaintiff to explain *why* a defendant committed the fraud . . . ." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679 (9th Cir. 2018) (emphasis in original). As explained further *infra* § I.B.3., all that is

---

[4] SCBH's own caselaw (Mot. (Dkt. 50) at 11:14-12:1) further supports that the "who" is adequately alleged. In *Heber v. Toyota Motor Sales, U.S.A., Inc.*, 823 F. App'x 512, 515 (9th Cir. 2020), and *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir. 2009), no employees of the corporate defendant were identified. The same holds true for *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001), which also suggested that the requirement to identify specific employees may be relaxed where such information is within the knowledge of the defendant but declined to do so in that case because the plaintiff was an employee with "inside knowledge" of the fraudulent operations.

required are allegations setting forth the nature of the kickback scheme. *United States v. Crescendo Bioscience, Inc.*, No. 16-02043, 2020 WL 2614959, at *9 (N.D. Cal. May 23, 2020); *see also United States ex rel. STF, LLC v. Vibrant Am., LLC*, No. 16-02487, 2020 WL 4818706, at *13 (N.D. Cal. Aug. 19, 2020) (allegations describing how the kickback arrangement was set up sufficient). That is alleged here. *See infra* § I.B.3. (citing FAC ¶¶ 57-93).

SCBH also argues there are no allegations J.E., Pershall, and Passmore requested the fraudulent enrollment of individuals, were aware of them, or certified the claims. Mot. (Dkt. 50) at 11:3-8. Here again, this argument concedes the "who" is identified.[5] Putting aside that knowledge can be alleged generally under Rule 9(b) – there is overwhelming evidence establishing SCBH's awareness and motivation for fraudulent enrollments.[6] After all, SCBH had the ultimate interest in ensuring that its patients were enrolled in the BCBSOK plans with the most robust benefits. *See United States v. Harkonen*, 510 F. App'x 633, 636 (9th Cir. 2013) (a "clear financial incentive" in connection with other circumstantial evidence is sufficient to support a jury verdict that a defendant had a specific scheme to defraud).

### 2. SCBH Could Not Lie on Claim Forms

SCBH next takes the remarkable position that they did not make any representations regarding compliance with laws or medical necessity when submitting claim forms because such certifications are only made for government (*i.e.* Medicare/Medicaid) plans. Mot. (Dkt. 50) at 13:1-14:12. Suffice to say, the

---

[5] While the FAC alleges that all Defendants caused the submission of the fraudulent claims, it is clear in identifying M.C. and L.R. as the specific individuals at SCBH that ***certified*** the claims. FAC ¶ 94.

[6] Many of SCBH's arguments are duplicative or overlapping. For example, it argues the "who" is not alleged based on insufficient details of kickbacks (Mot. (Dkt. 50) at 10:28-11:2), and then later explicitly argues there are insufficient details about the kickbacks (Mot. (Dkt. 50) at 15:17-16:11). Similarly, it argues that the "who" was not alleged because there are no allegations SCBH was aware of the enrollments (Mot. (Dkt. 50) at 11:3-8) and then later explicitly argues there are insufficient details of SCBH's awareness. Mot. (Dkt. 50) at 19:7-20:16. To avoid duplication and confusion, BCBSOK is addressing these arguments in detail in the later sections.

1  notion that SCBH could get paid from claims based on illegal kickbacks and

2  misrepresented information is specious. The claim form itself (Box 31) – attached as

3  Exhibit 1 to SCBH's Motion – specifically states that the certifications on the reverse

4  side apply.  Box 17a of the claim forms requires the disclosure of referral sources.

5  And SCBH's representations regarding cost-share waivers are based on the face of

6  the claim, not any certifications.

7      More to the point, every provider in California that submits claims to private

8  insurers represents that the statements therein are truthful, seek medically necessary

9  services, do not conceal material information, and are not a product of kickbacks,

10  patient brokering, or other enumerated misconduct. *See, e.g.*, Cal. Penal Code §

11  550(b)(2)-(3). Violations are "not negated by the absence of an express misstatement

12  of fact contained in a resulting claim."  *State ex rel. Wilson v. Superior Ct.*, 174 Cal.

13  Rptr. 3d 317, 325–26 (Ct. App. 2014). Otherwise, one could avoid liability by simply

14  hiding unlawful conduct.[7] *See id.* If anything, SCBH's position is telling of its

15  dishonest practices and bolsters the FAC's allegations.[8]

16      ### 3.  The FAC Sufficiently Alleges the Nature of the Kickback Scheme

17      A plaintiff alleging fraudulent kickbacks need only allege the nature of the

18  kickback scheme. *See, e.g.*, *Crescendo Bioscience*, 2020 WL 2614959, at *9. The

19  FAC does that by delineating the individuals involved (¶¶ 59-63), the complex web

20  of kickbacks between them (*see id.* ¶¶ 82-86), and how they overlapped with each

21  other as part of an interrelated scheme (*see id.* ¶¶ 58, 85). Courts have found similar

22  allegations sufficient. *See, e.g.*, *Crescendo Bioscience*, 2020 WL 2614959, at *9

23  (similar allegations showed nature of kickbacks); *Vibrant Am., LLC*, No. 16-02487-

[7] Moreover, as BSBCOK will demonstrate through expert testimony, industry custom is developed such that everyone who submits a claim for payment is certifying the accurateness of the information therein and compliance with applicable laws. FAC ¶ 33. Such fact-specific issues are inappropriate for resolution on a motion to dismiss.

[8] SCBH appears to concede that if they did make certifications in claim forms, then the claims spreadsheet would be sufficient to meet Rule 9(b). Mot. (Dkt. 50) at 14:13-15 (stating claims spreadsheets are insufficient because the forms don't make certifications).

JCS, 2020 WL 4818706, at *13 (allegations describing how the kickback arrangement was set up sufficient).

Nevertheless, SCBH contends more is required. ***First,*** SCBH argues the FAC fails to identify any specific kickback payments or the dates and times they occurred. Mot. (Dkt. 50) at 15:27-16:4. But "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud."[9] *Swoben*, 848 F.3d at 1180; *see also Crescendo Bioscience, Inc.*, 2020 WL 2614959, at *9 (rejecting similar argument).

***Second***, SCBH argues the FAC fails to address whether it was eligible for safe harbors that permitted it to waive copays and provide free sober living. Mot. (Dkt. 50) at 17:1-18:13. Safe harbors are affirmative defenses that need not be addressed in a complaint. *See United States v. Vernon*, 723 F.3d 1234, 1271 (11th Cir. 2013) (concluding that safe harbor provisions are an affirmative defense that must be proven by the defendant); *United States v. Rafiekian*, 991 F.3d 529 (4th Cir. 2021) (initial burden of claiming exception to copay waivers falls to the defendant). If anything, the fact SCBH is able to raise affirmative defenses only proves that it has "notice of the particular misconduct which is allege to constitute the fraud so that [it] can defend against the charge." *Swoben*, 848 F.3d at 1180 (*quoting Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001))

Moreover, these defenses fail as a substantive matter. A "systemic failure to collect" patient cost-shares as alleged in the FAC does not make SCBH eligible for a safe harbor. *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, 2023 WL 2808747, *37 (C.D. Cal. Jan. 13, 2023) (denying summary judgment due to systemic failure to collect cost-shares). Nor is the sober living safe harbor available when free housing is contingent on the patient's

---

[9] Although not required, there are specific dates, times, and individuals identified for most of the kickbacks in the scheme. For example, each time the copay was waived is identified in Exhibits B. And the time periods for housing kickbacks can be found by the dates of outpatient treatment in Exhibit B.

continued enrollment in a treatment program, as alleged in FAC ¶¶ 84-85.[10] *See* Cal. Health & Safety Code § 11831.65(b) (3).

***Third***, SCBH lists, in scattershot fashion, certain facts allegedly missing from the FAC. These arguments ignore the FAC and are little more than factual denials:

- SCBH argues there are no allegations of marketing and kickbacks with respect to BCBSOK members. That is the central thrust of this entire case. The FAC identifies the members subject to its allegations (Exhibits A-C), two specific BCBSOK members that received the kickbacks (*see* FAC ¶ 84), and details how the kickbacks worked (FAC ¶¶ 58, 84-86).

- SCBH argues there are no specific members identified for whom cost-shares were waived. Mot. (Dkt. 50) at 18:1-3. The FAC alleges this was a pervasive business practice and identifies all the cost-share fields that were waived. *See* Ex. B ("PAT COST SHARE"). Contrary to SCBH's assertion, there is waived cost share with respect to at least one of the exemplar patients.[11]

- SCBH argues BCBSOK "does not specifically identify a single BCBSOK member who was housed during SCBH outpatient treatment in a sober living house owned or operated by co-defendants RAD Life, EIE, Pershall or Passmore." Mot. (Dkt. 50) at 18:14-19:1. The FAC walks through 2 patients who got free housing in one of Passmore's EIE houses during outpatient

---

[10] SCBH's contention in footnote 17 (Mot. (Dkt. 50) at 17:18-19) that the FAC supports the application of this exception due to the patient's indigent status is wrong. A truly indigent patient would not be able to afford full ACA premiums and need to enroll in the Oklahoma Medicaid plan (SoonerCare), which was unlikely to cover treatment at SCBH. FAC ¶ 43. Thus, SCBH and the other defendants fraudulently misrepresented the financial status of the patients so they could enroll in the BCBSOK plans. *Id.* ¶ 44. SCBH cannot simultaneously contend a patient was not indigent so it could enroll in an ACA plan and then argue a patient was indigent to become eligible for a sober living exception. More importantly for present purposes, the issues of a patient's financial status and what SCBH did (or did not do) in relation thereto are for discovery.

[11] While the exemplar EOBs had no cost-share for two specific claims, the full range of claims for those members is set forth in Exhibit B. Member AA's claims data is contained at ECF No. 45-2 at 632-633 (sub ID 947455) and shows that she did have cost-share and the FAC alleges it was waived.

-15-

treatment. FAC ¶ 84. It also identifies several patients who clearly stayed at houses run by Pershall and Passmore as evident by the fact their mailing addresses were controlled by Pershall and Passmore (as well as SCBH addresses). FAC ¶ 71.

### 4. SCBH Directed and Was Aware of Fraudulent Enrollments

Exhibit A of the FAC identifies 668 individuals that were fraudulently enrolled. The FAC further walks through the specific details of **_how_** the fraudulent enrollment scheme worked by targeting the types of BCBSOK plans that would pay the highest amount (FAC ¶¶ 64-79), while also providing specific examples of two patients that were fraudulently enrolled. *Id.*

SCBH counters that it was not aware of the enrollments. Mot. (Dkt. 50) at 19:17-21. This argument fails at every turn. While it is settled that awareness and knowledge can be alleged generally under Rule 9(b), the FAC directly alleges that the entire scheme, including enrollments, was organized and directed through J.E. and A.H. *See* FAC ¶¶ 60, 68. It is equally settled that because "direct evidence of fraud is rare, the elements of fraud are often established by reasonable inferences from circumstantial evidence." *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-02436, 2023 WL 8040871, at *3 (N.D. Cal. Nov. 20, 2023). The circumstantial evidence here is overwhelming. Most patients were **_admitted_** within **_days_** of their plans becoming effective. FAC ¶ 62. Specific types of BCBSOK plans were targeted to achieve the highest payments, while Oklahoma Medicaid plans were specifically avoided (*id.* ¶ 64), which would only have been done if SCBH had an interest in the quality of the insurance plans. And SCBH locations were marked as the address for at least some patients. *Id.* ¶ 71. Taking all inferences in BCBSOK's favor, the FAC alleges more than enough to establish SCBH's awareness of the enrollments.

### V.    BCBSOK ADEQUATELY PLEADS ITS RICO CLAIMS (COUNTS II AND III)

To recover under RICO, "a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

-16-

1  *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*

2  *Ltd.*, 943 F.3d 1243, 1248 n.5 (9th Cir. 2019) (quotation omitted). "All the authorities

3  agree that RICO is extraordinarily broad as written, and for good reason." *Bruns v.*

4  *Ledbetter*, 583 F. Supp. 1050, 1054 (S.D. Cal. 1984). As such, "RICO should be

5  "read broadly" and "liberally construed." *In re ZF-TRW Airbag Control Units*

6  *Products Liab. Litig.*, 601 F. Supp. 3d 625, 739 (C.D. Cal. 2022) (quotation omitted).

7  SCBH challenges the elements of racketeering activity and an enterprise.

8      **A. <u>The FAC Pleads an Enterprise by Identifying Multiple Alternative</u>**

9         **<u>Associations-in-Fact</u>**

10      RICO defines "enterprise" broadly to include "any individual, partnership,

11  corporation, association, or other legal entity, and any union or group of individuals

12  associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-

13  in-fact enterprise is . . . a continuing unit that functions with a common purpose."

14  *Boyle v. United States*, 556 U.S. 938, 944, 948 (2009). The "concept of an association

15  in fact is expansive", *Id.* at 944, and will be established whenever "a group of persons

16  associate[] together for a common purpose of engaging in a course of conduct."

17  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

18      This standard is easily met here. The FAC identifies two alternative

19  associations-in-fact involving SCBH, one involving all Defendants and one

20  involving SCBH and Body Broker Defendants. In both alternatives, the pieces

21  functioned as a single unit to achieve the common purpose of obtaining fraudulent

22  insurance payments. *Boyle*, 556 U.S. at 944. Courts in this District have found ***similar***

23  ***allegations, involving very similar schemes***, to constitute a RICO enterprise:

24          Plaintiffs allege that the Revive Defendants employed K.A. as a body

25          broker and worked with the other defendants to offer kickbacks.

26          Plaintiffs' spreadsheet details the alleged fraudulent claims related to

27          these kickbacks. Plaintiffs also allege that the Defendants worked

28          together to move patients between providers to maximize alleged

-17-

fraudulent billings. This is sufficient to allege that the Revive Defendants were part of a continuing unit that functions with a common purpose.

*Young*, 2024 WL 5182638, at *6 (internal citations omitted).

SCBH attacks both associations-in-fact.[12] As to the **_first_** (*involving all Defendants*), SCBH repeats its assertion that there "no factual allegations showing that SBCH had any knowledge of Eisworth's alleged fraudulent enrollments." Mot. (Dkt. 50) at 22:7-10. This argument fails for the same reasons set forth above. *Supra* § I.B.4. Nor are allegations of awareness required for this claim because "[s]ection 1962(c) does not require that a defendant have awareness of every detail of a scheme, but simply that the defendant have knowledge of the 'general nature of the enterprise and know that the enterprise extended beyond his individual role.'" *Tatung Company, Ltd. V. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1166 (C.D. Cal. 2016); *see also United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (denying this argument because the "RICO net is woven tightly to trap even the smallest fist, those peripherally involved with the enterprise."). The FAC here alleges that SCBH knew "the general nature of the enterprise and kn[e]w that the enterprise extends beyond [its] individual role." *Christensen*, 828 F.3d 763, 780. Nothing more is required.

As to the **_second_** (*comprised of SCBH and Body Broker Defendants*), SCBH repeats its argument that there are no factual allegations showing SCBH paid kickbacks to Body Broker Defendants or members, or falsely certified that BCBSOK claims did not violate kickback or bribery laws. Mot. (Dkt. 50) at 22:12-18. This argument fails for the same reasons set forth above. And it also conflates the

---

[12] SCBH suggests the pleading of alternative associations-in-fact underscores BCSOK's "uncertainty about the existence of an enterprise . . . ." Mot. (Dkt. 50) at 22:5-6. A "plaintiff may allege alternative associations-in-fact to satisfy the enterprise requirement. 8545 Am. Jur. Trials 113; *see also Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 959 (C.D. Cal. 2001) (denying motion to dismiss and noting that the plaintiff alleged "four different possible enterprises"). SCBH itself recognizes that this is "technically permissible as a matter of pleading." Mot. (Dkt. 50) at 22:6.

underlying conduct with the element of "enterprise." An enterprise just requires "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. That is alleged here. Whether predicate acts are alleged is a separate inquiry.

## B. <u>The FAC Adequately Alleges RICO Predicate Acts</u>

The RICO claim is grounded in a pattern of racketeering activity involving multiple acts of Mail and Wire Fraud, 18 U.S.C. §§ 1341, 1343, and violations of the Travel Act, 18 U.S.C. § 1952. FAC ¶ 13. In response, SCBH rehashes its contention that because the Rule 9(b) standard is not met, a pattern of racketeering activity cannot be established. Mot. (Dkt. 50) at 23:5-6 ("as previously described to the fraud claim . . . ."). As explained above, that argument fails.

For the sake of completeness, each of the predicates is more than adequately alleged. Mail and Wire Fraud under 18 U.S.C. §§ 1341, 1343 require the: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). The FAC alleges each of these elements. Paragraphs 58-94 spell out the formation of the scheme, how it operated, and the specific intent to defraud. Paragraphs 112-13 explains how Defendants used mails and wires to further the scheme through, *inter alia*, the submission of healthcare claims and the federal marketplace.

The Travel Act, 18 U.S.C. § 1952, requires (1) interstate travel or the use of interstate mail or facilities, (2) with an intent to promote or carry on an unlawful activity, and (3) a subsequent overt act in furtherance of that unlawful activity.[13] *See U.S. v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992). The first element is met because body brokering – from Oklahoma across the country to California – is a paradigm of interstate travel. The second element is met because bribery under the Travel Act

---

[13] Unlike Mail and Wire Fraud, the Travel Act is not subject to Rule 9(b).

includes kickbacks for patient referrals, which is expressly prohibited by 74 OK Stat § 3404, Cal. Penal Code § 549, Cal. Ins. Code §§750, 1871.4, 1871.7, and Cal. Health & Safety Code §§ 445, 11831.6. *United States v. Perrin*, 580 F.2d 730, 733 (5th Cir. 1978) (Travel Act bribery includes commercial bribery under state law). And the third element is met through the subsequent overt acts of actually making the kickbacks and then billing BCBSOK.

## VI.   RULE 9(B) IS INAPPLICABLE TO THE NON-FRAUD COUNTS

SCBH contends all the remaining claims (Counts 4-9) are subject to Rule 9(b)'s heightened pleading standard and fail for the same reasons as the fraud claim. Mot. (Dkt. 50) at 24:19-25:3. This issue is ultimately moot because BCBSOK meets the Rule 9(b) standard for all claims. Nonetheless, a claim for which fraud is not an "essential element" of the cause of action need not meet the Rule 9(b) standard. *Matilock, Inc. v. Pouladdei*, No. 20-01186, 2020 WL 3187198, at *3 (N.D. Cal. June 15, 2020). As relevant here, SCBH seeks dismissal of fraud claim on the basis that they did not actually make misrepresentations about body brokering, kickbacks, *etc*. in claim forms to BCBSOK. *See* Mot. (Dkt. 50) at 13:1-14:12. As noted above, BCBSOK strongly disagrees. But to the extent the Court accepts SCBH'S argument that it made no representations on claim forms, the remaining counts (except Count 5 for negligent misrepresentation) could proceed outside of Rule 9(b) based upon the underlying conduct because they do not require any representations.

## VII.   IF ANY CLAIMS ARE NOT ADEQUATELY PLEAD, AMENDMENT WOULD CURE ANY DEFICIENCIES

As noted above, all claims in the FAC are adequately pled. But to the extent the Court finds deficiencies, BCBSOK requests leave to amend. Leave is given with "extreme liberality" unless a complaint cannot be cured by amendment. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Given that SCBH's arguments are all based on asserted factual deficiencies, any issues the Court finds can be cured via amendment.

Dated: May 16, 2025                    FOX ROTHSCHILD LLP

                                       By: */s/* Benjamin McCoy
                                       Benjamin McCoy
                                       John J. Shaeffer
                                       Matthew Follett
                                       10250 Constellation Avenue, Suite 900
                                       Los Angeles, CA 90067
                                       Tel: 310-228-4481
                                       Fax: 310-556-9828

                                       *Attorneys for Plaintiff*