UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                              Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

Present: The Honorable:     Michelle Williams Court, United States District Judge

| T. Jackson | No Reporter |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs: N/A        Attorneys Present for Defendants: N/A

**Proceedings: (IN CHAMBERS) Order DENYING motion to dismiss filed by Pershall and RadLife (Dkt. 47), motion to dismiss filed by Passmore and EIE (Dkt. 48), joinder and motion to dismiss filed by ER (Dkt. 49), and motion to dismiss filed by South Coast (Dkt. 50)**

There are four motions before the Court.  First, Defendants Brett Pershall ("Pershall") and RadLife Recovery, LLC ("RadLife") filed a motion to dismiss.  Dkt. # 47 ("*Pershall MTD*").  Plaintiff Blue Cross and Blue Shield of Oklahoma ("Plaintiff" or "Blue Cross") opposed, Dkt. # 60 ("*Pershall Opp.*"), and Pershall and RadLife replied, Dkt. # 62 ("*Pershall Reply*").  Second, Defendants Cari Passmore ("Passmore") and Everything in Excellence, LLC ("EIE") filed a motion to dismiss.  Dkt. # 48 ("*Passmore MTD*").  Plaintiff opposed, Dkt. # 59 ("*Passmore Opp.*"), and Passmore and EIE replied, Dkt. # 61.  Third, Excellence Recovery LLC ("ER") filed a motion to dismiss and joined the motion to dismiss filed by Passmore and EIE.  Dkt. # 49 ("*ER MTD*").  Fourth, South Coast Behavioral Health, LLC ("South Coast") filed a motion to dismiss.  Dkt. # 50 ("*SC MTD*").  Plaintiff opposed, Dkt. # 58 ("*SC Opp.*"), and South Coast replied, Dkt. # 63.  This Order refers to Pershall, RadLife, Passmore, EIE, ER, and South Coast collectively as "Defendants."

The Court finds the matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the papers, the Court **DENIES** Defendants' motions to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

I.      Background

      A.      Factual Background

      This case involves alleged health insurance fraud.  The first amended complaint ("FAC") alleges as follows:

      California-based substance use disorder treatment providers, and their co-conspirators, have victimized hundreds of individuals suffering from substance use disorder, especially members of Native American tribes.  *FAC* ¶¶ 1, 3.  In the last few years, Defendants have trafficked thousands of Oklahoma residents across the country to California under the guise of obtaining substance use disorder treatment.  *Id.* ¶ 2.

      The scheme involves the following individuals and entities:

- EIE is an Arizona limited liability company providing sober living services to individuals with substance use disorder.
- ER is an Arizona limited liability company providing treatment for substance use disorder patients.
- Passmore, an individual, partly owns and operates EIE and ER.
- RadLife is a California limited liability company that, like EIE, provides sober living services to individuals with substance use disorder.
- Pershall owns and operates RadLife.
- South Coast is a California corporation providing detox treatment for substance use disorder patients.
- Eisworth[1] is an insurance agent located in Oklahoma.

*Id.* ¶¶ 9–16, 58.

      The Court refers to EIE, Passmore, RadLife, and Pershall collectively as the Sober Living Defendants.[2]

---

[1] After the filing of the FAC, Plaintiff dismissed Eisworth as a defendant.  Dkt. # 46.

[2] The Court notes that Plaintiff refers to the Sober Living Defendants as the "Body Brokers" in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

The scheme begins with South Coast, the treatment provider, hiring the Sober Living Defendants to track down individuals who might need treatment and coerce them into enrolling at South Coast through promises of free treatment. *FAC* ¶ 59. The Sober Living Defendants primarily found treatment candidates through social media or word of mouth. *Id.* ¶ 63. For example, Passmore initiated contact with targets by scouring Facebook groups in which individuals discussed substance use disorder treatment. *Id.* ¶ 63. The Sober Living Defendants then worked to enroll potential patients into Plaintiff Blue Cross's insurance plans, often using fraudulent information. *Id.* ¶ 65.

The FAC provides examples of indicators revealing the fraudulent nature of the enrollment. *Id.* The enrollment dates for most of the enrolled members were within days of when their treatment commenced. *Id.* Over two-thirds of the members enrolled in Blue Cross outside of the open enrollment period, can only be done upon a "qualifying event." *Id.* Yet, many of the qualifying events used to justify a special enrollment period were false. *Id.* The Sober Living Defendants also falsified residency information to allow potential patients to meet the Blue Cross residency requirements. *Id.* ¶ 66. Because the Sober Living Defendants were not qualified or licensed to perform the actual insurance enrollment process, they utilized Eisworth, an Oklahoma insurance agent. *Id.* ¶ 68. Pershall, Passmore, and South Coast executive J.E. routinely asked Eisworth to enroll the individuals they had tracked down in Oklahoma into Blue Cross benefit plans, so all of them could make money off enrolled individuals. *Id.* Communications between Pershall, Passmore, J.E., and Eisworth usually occurred through text messages or encrypted communication applications. *Id.*

Once contacted by Passmore or Pershall, Eisworth would instruct potential enrollment members to lie about their annual income, employment status, and residency, so the individuals would appear eligible for Blue Cross plans and government subsidies. *Id.* ¶¶ 65, 70. The FAC provides examples, including that Eisworth told an enrolled member to create a fake monthly income statement so the income would be high enough to avoid government insurance (which would not cover treatment in California) and low enough for eligibility into cost-share reductions and tax subsidies. *Id.* ¶¶ 73–76 (providing screenshot of handwritten income statement). Eisworth enrolled two-thirds of the hundreds of Blue Cross members who ultimately received treatment at South Coast. *Id.* ¶ 69. The FAC attaches an exhibit with the specific Blue Cross members that Eisworth enrolled. *Id.* ¶ 79. Once members were enrolled with Blue Cross, South Coast could bill Blue Cross for the treatment of those individuals. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

Once covered by Blue Cross, the enrolled members were flown to California for
detox treatment from South Coast, which Blue Cross would cover. *Id.* ¶ 58. Upon
admission to detox, South Coast gave the Sober Living Defendants "bed vouchers,"
which provided the Sober Living Defendants with priority to house the patients after the
patients completed detox with South Coast. *Id.* ¶ 80. As part of the bed voucher, South
Coast took its insurance payments (the ones received from Blue Cross) and split them
with the Sober Living Defendants. *Id.* Unbeknownst to Blue Cross, South Coast and EIE
did not collect copays or any cost-share for the treatment from patients, as required. *Id.*
¶ 81. Instead, the members enrolled in Blue Cross received free care, which removed an
incentive incorporated into the insurance plan meant to keep the plan affordable but also
motivate members to find the best and most cost-effective care. *Id.* In other words,
patients lived at the homes of the Sober Living Defendants for free, on the condition the
patients attended South Coast for treatment, allowing South Coast to bill their insurance.
*Id.* ¶ 84.

The FAC describes the experience of Member A as an example. Eisworth
enrolled Member A on Blue Cross insurance after telling Member A to create a fake
monthly income statement. *Id.* ¶¶ 72–75. Passmore then brought Member A to
California for detox treatment with South Coast. *Id.* ¶ 84. After detox, Member A lived
in the EIE sober living home operated by Passmore. *Id.* During her stay, Member A did
not pay anything out of pocket for outpatient treatment or for living expenses. *Id.* The
FAC refers to these allegations as a kickback system. Enrolled members received two
kickbacks: free treatment and free housing. *Id.* ¶ 85. The Sober Living Defendants also
received kickbacks. *Id.* ¶¶ 80–85. In exchange for tracking down potential patients,
sending them to Eisworth for enrollment, and keeping the patients within Defendants'
system (making sure the patients stay in Defendants' system so South Coast could
continue to bill Blue Cross), South Coast gave the Sober Living Defendants priority to
house the enrolled members (bed vouchers) and a split of the insurance payments from
Blue Cross. *Id.*

The FAC clarifies the problems with this system by describing the health
insurance industry. In the substance use disorder industry, there are two relevant levels
of care: inpatient treatment and outpatient treatment. *Id.* ¶¶ 48–49. The most intense
level of care is inpatient treatment, also known as "detox." *Id.* ¶ 49. Inpatient/detox
treatment means a patient is housed in a qualified facility (e.g., hospital) and is under 24-
hour care. *Id.* The goal of inpatient treatment is withdrawal management and
stabilization of the patient. *Id.* Inpatient treatment can last a few weeks. *Id.* Once a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

patient is discharged from inpatient treatment, the next level of care is outpatient treatment. *Id.* ¶ 50.

Outpatient treatment is divided into two subsections: partial hospitalization and intensive outpatient treatment. *Id.* Both subsections are performed outpatient, which means they do not involve housing patients. *Id.* ¶ 51. Rather, care is delivered in temporary settings, like specific appointments. *Id.* Nevertheless, many patients choose to live away from their homes during the outpatient period, to avoid stressors that may have contributed to their addiction in the first place. *Id.* ¶ 52. Sober living homes have been created, in theory, to provide a controlled living environment for individuals going through intense outpatient treatment, until they are ready to return home. *Id.* ¶ 53. An individual's health insurance covers the payments for outpatient treatment, as in the specific appointments that patients attend. *Id.* ¶ 54. However, health insurance does not cover rent or housing costs during the patient's outpatient treatment, regardless of whether the individual lives in their home or in a sober living home. *Id.* Each level of treatment is supposed to be temporary. *Id.* ¶ 55. And health benefit plans usually stop paying for a level of care once the patient reaches their "baseline," meaning they stop showing improvement. *Id.*

In contrast to industry norms, the bed voucher system gave the Sober Living Home Defendants priority to house the patients, and then South Coast split the insurance payments it had received from Blue Cross with the Sober Living Defendants. *Id.* ¶¶ 84–85. This system allowed South Coast to keep control of the enrolled patients throughout the inpatient and outpatient treatment periods and allowed them to continue billing Blue Cross while patients stayed in the Sober Living Defendants' housing for free. *Id.* ¶ 86. By spreading out enrollment and treatment at what appeared to be distinct providers, South Coast, EIE, ER, and South Coast were able to "milk further payments" out of Blue Cross by avoiding the fraud and overutilization safeguards that Blue Cross utilizes to detect fraud and abuse. *Id.* ¶ 90. Moreover, at times, Defendants paid the patients' insurance premiums to ensure their plans remained active, so Blue Cross would continue to send payments to South Coast. *Id.* ¶ 86. For example, Passmore instructed her staff to pay for Blue Cross payments on behalf of enrolled members, and then she reimbursed her staff through third-party applications like Venmo. *Id.*

Two specific individuals at South Coast spearheaded the scheme. *Id.* ¶ 60. The FAC refers to the individuals by their initials, J.E. and A.H., and notes that they held positions in South Coast that included "head of marketing," "director of business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

development," and/or "director of business relations." *Id.* J.E. paid to set up the scheme and paid the Sober Living Defendants. *Id.* ¶ 61. When working for South Coast, J.E. was "so close" with Pershall and Passmore, and the group met so routinely, that some patients believed the Sober Living Defendants' homes were "J.E.'s houses." *Id.* ¶¶ 61–62.

The FAC further asserts many services that were supposed to be provided by Excellence were not in fact provided. *Id.* ¶ 93. Specifically, Passmore instructed staff to document that group sessions had occurred, when they had not. *Id.* Passmore also gave enrolled members "comfort meds" from a stockpile of old medication she kept from prior patients, without any professional prescription or administration. *Id.* Once the insurance payments from Blue Cross stopped, the substance disorder providers would "kick patients to the curb, leaving these vulnerable individuals to fend for themselves thousands of miles from their homes." *Id.* ¶ 5. The FAC provides the following chart depicting the alleged scheme:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

*Id.* ¶ 58.

Blue Cross asserts Defendants' actions in this scheme have caused Blue Cross to issue over $36 million in wrongful payments. *Id.* ¶ 6. In an attached exhibit, the FAC provides the false and fraudulent claims submitted by South Coast to Blue Cross, including the patient's name (redacted in the publicly filed complaint), patient claim number, claim dates, procedure code, revenue code, billed amount, paid amount, cost share amount, and provider identifier. *Id.*, Ex. B ("*SC Spreadsheet*"). In a similar attachment with the same information categories, the FAC provides the false and fraudulent claims submitted by ER. *Id.*, Ex. C ("*ER Spreadsheet*").

B.    Procedural Background

On March 31, 2025, Blue Cross filed its FAC, asserting nine causes of action: (1) fraud; (2) RICO, 18 U.S.C. § 1962(c); (3) RICO Conspiracy, 18 U.S.C. § 1962(d); (4) negligent misrepresentation; (5) intentional interference with economic/contractual relationships; (6) aiding and abetting; (7) violations of Business and Professional Code § 17200; (8) money had and received; and (9) unjust enrichment, quantum meruit, and restitution. *See generally FAC.* With this lawsuit, Blue Cross seeks to recover damages and to prevent Defendants from causing further damage. *Id.* ¶ 7. On April 24, 2025, Defendants filed four motions to dismiss the FAC. *Pershall MTD*; *Passmore MTD*; *ER MTD*; *South Coast MTD*.

II.    Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

III.    Motion to Dismiss by Pershall and RadLife

The Court first analyzes the motion to dismiss filed by Pershall and RadLife. *Pershall MTD*. Pershall and RadLife forward various arguments to dismiss Plaintiff's FAC. The Court addresses each.

A.    Fraud

i.    *"Who" Prong*

Pershall and RadLife (owned and operated by Pershall) assert the FAC does not clarify which individuals at RadLife were engaged in the alleged fraud. *Pershall MTD* 13:14–14:18. However, the FAC identifies Pershall as the individual, in numerous paragraphs. For example, J.E. (an executive at South Coast) often met with Pershall at South Coast's main office, and J.E. often made payments to Pershall in cash in furtherance of the scheme. *FAC* ¶ 61. Pershall also tracked down potential enrolled members and sent them to Eisworth to fraudulently enroll them in Blue Cross insurance. *Id.* ¶¶ 67–68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                        Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

ii.    *Factual Particularity About Certification*

Pershall and RadLife further argue the FAC does not provide factual particularity regarding South Coast's certifications of compliance with anti-kickback laws. *Pershall MTD* 14:19–15:28. Pershall and RadLife state that the CMS-1500 form used by South Coast for claims to Blue Cross did not require a certification of compliance and the Blue Cross provider agreement did not impose a certification requirement. *Id.* Plaintiff responds that the "notion" that Defendants "could get paid from claims based on illegal kickbacks and misrepresented information is specious." *Pershall Opp.* 10:6–8; *SC Opp.* 12:18–13:6. Plaintiff states that the claim form South Coast filled out has a certification box and that every provider in California submitting claims to private insurers must make truthful statements and seek medically necessary services. *SC Opp.* 12:18–13:15.

The FAC alleges that Defendants' scheme involved submitting payments to Blue Cross based on misrepresentations. As the entity (and individual within the entity) tracking down potential enrolled members, sending them to Eisworth to falsify enrollment information, and then accepting payments from South Coast to keep patients in the scheme, the roles of RadLife and Pershall are clear from the FAC. Moreover, the FAC provides detail about the certification allegations, including the names of the specific claim forms requiring certification and the individuals from South Coast and ER who signed them. *FAC* ¶¶ 26–33, 88, 94, 119; *see Humana Inc. v. Mallinckrodt ARD LLC*, No. CV 19-06926 DSF (MRW), 2020 WL 3041309, at *10 (C.D. Cal. Mar. 9, 2020) ("Plaintiff has alleged that each time Defendant certified that it was in compliance with federal and state laws, it knowingly made a false statement because it knew at the time it made the statements that its co-pay assistance violated federal statutes and its doctor payments violated state law. This is sufficient."). If RadLife and Pershall wish to dispute that South Coast did not make certifications to Blue Cross, then RadLife and Pershall can brief the Court on that issue. However, in this motion to dismiss, RadLife and Pershall argue there is a lack of specificity in the FAC under Rule 9(b). *Pershall MTD* 14:19–15:28. That is not so. The FAC's theory of certification is clear. The Court will not provide an advisory opinion about whether the FAC's theory is legally viable.[3]

_____

[3] South Coast forwards the same argument in its motion to dismiss. *SC MTD* 12:2–15:14. South Coast provides one of the health claim forms as an exhibit (CMS-1500 form), which, if anything, indicates there is specificity in the FAC enough to put South Coast on notice about the submitted claims. The claim form includes a notice stating, "Any person who knowingly files a statement of claim containing any misrepresentation or any false,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

### iii.    *Factual Particularity About Kickback Scheme*

Rad Life and Pershall argue there is no factual particularity regarding their role in the kickback aspect of the alleged scheme. *Pershall MTD* 16:1–18:23. Rad Life and Pershall state: (1) the FAC does not mention any specific dates or amounts of payment exchanging hands between them and South Coast, (2) the FAC mentions meetings between the two, which were merely "routine and necessary" collaboration, but otherwise does not mention communications between Pershall, RadLife, and the other Defendants, (3) the communications between RadLife, Pershall, and the potential enrolled members were "entirely benign" marketing, and (4) the FAC does not provide details as to how Pershall and RadLife located individuals and fraudulently enrolled them in Blue Cross plans. *Id.*

However, the FAC details what it refers to as the kickback scheme, as well as the roles of Pershall and RadLife in that scheme. The FAC specifies that in exchange for the Sober Living Defendants finding individuals and fraudulently enrolling them in Blue Cross insurance, South Coast provides the Sober Living Defendants with priority in housing patients (with bed vouchers) and South Coast splits the insurance payments from Blue Cross with the Sober Living Defendants at in-person meetings via cash payments to avoid detection. *FAC* ¶¶ 61, 80–85. Although the FAC does not allege a specific date a cash payment was exchanged to the Sober Living Defendants, or the amount of any specific payment, the FAC does provide sufficient detail, including the who, what, when, where, and how of the alleged payment scheme. *See United States v. United Healthcare Ins.*, 848 F.3d 1161, 1179 (9th Cir. 2016) (noting, in the False Claims Act context, that the Rule 9(b) standard "does not require absolute particularity or a recital of the evidence" and therefore the complaint "need not allege 'a precise time frame,' 'describe in detail a single specific transaction,'" "identify the 'precise method' used to carry out the fraud," or "identify representative examples of false claims to support every allegation" (citations omitted)). RadLife and Pershall cite no authority requiring additional detail.

As to communications between the Defendants, the FAC specifies Pershall met so regularly with J.E. (the South Coast employee leading the scheme) that patients believed

---

incomplete or misleading information may be guilty of a criminal act . . . and may be subject to civil penalties." *Id.*, Ex. 1, 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                     Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

they were staying in "J.E.'s houses" rather than Pershall's homes.  *FAC* ¶¶ 61–62.
Pershall and RadLife argue these meetings are benign (*Pershall MTD* 16:11–17:1), but
that is a question of fact not proper for a motion to dismiss.  Similarly, Pershall and
RadLife argue their communications with enrolled members living in Oklahoma are
benign marketing (*id.* 17:14–26), but that too is a dispute of fact inappropriate for this
motion to dismiss.  As to the enrollment phase of the scheme, the FAC describes South
Coast hired Pershall and RadLife to enroll potential patients in Blue Cross plans, often
using fraudulent information, such as falsifying "qualifying events."  *Id.* ¶¶ 9, 65.  To
carry out the enrollment of individuals through fraud, the FAC states that Pershall and
RadLife directed individuals to Eisworth to complete the enrollment process.  *Id.* ¶¶ 67–
70.  The Court finds the FAC sufficiently describes Pershall's and Radlife's role in the
scheme.

     *iv.*    *Factual Particularity About Free Housing*

     Pershall and RadLife argue the FAC does not provide factual particularity as to the
free housing scheme because: (1) the California Health & Safety Code allows discounted
or subsidized housing so long as the provider places the individual on a repayment plan
and makes a good faith effort to collect the debt; (2) the FAC does not identify a Blue
Cross member who they housed during outpatient treatment; and (3) sober living
providers need not be licensed to participate in continued care, per industry standards.
*Pershall MTD* 18:24–20:16.

     As to the arguments regarding the Health & Safety Code and whether the Sober
Living Defendants need licenses, these arguments do not pertain to whether the FAC
provides specifics as required under Rule 9(b).[4]  If Defendants seek to bring a motion
arguing their scheme is legal because patients were on a repayment plan or for another
reason, then they may.  But the Court has not been briefed on or asked to resolve that
issue.  Instead, Defendants argue the FAC did not meet the specificity standard under
Rule 9(b).  Moreover, though the FAC only identifies (by identification number)
individuals Passmore (not Pershall) housed, the FAC provides enough factual detail
under Rule 9(b) about the free housing scheme.  The FAC need not name each individual
with substance use disorder who was housed by Passmore and RadLife.

---

[4] Moreover, Plaintiff notes these arguments are affirmative defenses not properly raised
on a motion to dismiss.  *Pershall Opp.* 12:16–13:4.  Pershall and RadLife do not provide
a response in their reply brief.  *See generally Pershall Reply*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title       Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

> *v.*    *Factual Particularity About Enrollment of Blue Cross Members*

Pershall and RadLife assert the FAC does not provide particularity about their role
in enrollment of individuals into Blue Cross insurance because: (1) the FAC improperly
imputes Eisworth's knowledge to the Sober Living Defendants rather than to his
insurance company; (2) no facts establish that Pershall and RadLife communicated with
Eisworth or knew he was the Oklahoma insurance broker who fraudulently enrolled up to
two-thirds of the members treated by South Coast; (3) there is no factual assertion that
connects Pershall and RadLife to Blue Cross members, South Coast, Eisworth, ER, EIE,
or Passmore; (4) Eisworth has been dismissed from this action and thus allegations
against Pershall and RadLife lack factual support; and (5) as sober living operators,
Pershall and RadLife play no role in the enrollment process or the billing process.
*Pershall MTD* 20:21–22:21.

As to Eisworth's actions, the FAC does not simply impute Eisworth's knowledge
to the Sober Living Defendants without support.  Rather, the FAC states the Sober Living
Defendants (including Pershall and RadLife) tracked down mainly uninsured individuals,
by infiltrating social media groups discussing substance abuse.  *FAC* ¶¶ 59, 63–64.  Then,
Sober Living Defendants persuaded the individuals to enroll with South Coast through
promises of free treatment.  *Id.* ¶ 59.  The FAC provides an example of an individual
posting on social media that they do not have insurance and do not have proof of
residency in Oklahoma, to which one of the Sober Living Defendants responds with a
phone number and write: "Call me for options out of state."  *Id.* ¶ 64.  The Sober Living
Defendants worked to enroll potential patients in Blue Cross by sending the potential
patients to Eisworth, generally communicating with him through text messages and
encrypted apps.  *Id.* ¶¶ 64–69.  Based on the allegations in the FAC, it is reasonable to
infer that the Sober Living Defendants knowingly funneled potential enrollees to
Eisworth, given that two-thirds of the hundreds of Blue Cross members who ended up
receiving treatment at South Coast (located in California) had been enrolled by Eisworth
(who was located in Oklahoma).  *See id.* ¶¶ 16, 64–69; *see also Immobiliare, LLC v.
Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 890 (E.D. Cal. 2019) (noting
knowledge may be pleaded generally under Rule 9(b) and the complaint need only "set
out sufficient factual matter from which a defendant's knowledge of a fraud might
reasonably be inferred" (citation omitted)).  It is not pertinent to the specificity of the
FAC that Plaintiff has since dismissed Eisworth as a party to this lawsuit.  RadLife and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                        Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

Pershall are on notice as to the claims against them regarding enrollment of potential patients.

      B.    <u>RICO</u>

      Pershall and RadLife argue the FAC fails to state a RICO claim.  To state a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property.  *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  "For purposes of RICO, 'racketeering activity' means: (1) 'any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year'; and (2) any act which is indictable under a number of specified federal criminal statutes."  *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1079 (C.D. Cal. 2009) (quoting 18 U.S.C § 1961(1)).  "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity."  *Id.* (quoting 18 U.S.C. § 1961(5)).

      "Cases in which RICO claims are predicated on fraud must conform to the heightened pleading requirements of Rule 9(b)."  *Aetna Life Ins. Co. v. Young*, No. 2:23-cv-09654-MCS-JPR, 2024 WL 5182638, at *4 (C.D. Cal. Sept. 25, 2024).  "When a plaintiff alleges 'a unified course of fraudulent conduct,' 'the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).'"  *Id.* (citations omitted).  "To avoid dismissal for inadequacy under Rule 9(b), [a] complaint would need to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"  *Id.* (citation omitted).

      Pershall and RadLife challenge the RICO elements of racketeering activity and enterprise.  The Court considers both in turn.

        i.    *Racketeering Activity*

      The RICO statute defines "racketeering activity" through a list of state and federal crimes, which includes mail and wire fraud.  18 U.S.C. § 1961(1).  To allege a RICO claim based on a predicate act of mail and wire fraud, a plaintiff must plead, along with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                              Date: June 20, 2025

Title       Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

the other elements of a RICO claim: "(1) a scheme or artifice devised with (2) the
specific intent to defraud and (3) use of the United States mail or interstate telephone
wires in furtherance thereof." *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002)
(citation omitted).

Pershall and RadLife contend the FAC fails to plead racketeering activity based on
the same Rule 9(b) arguments resolved above. *See Pershall MTD* 23:4–26. These
arguments fail for the same reasons already addressed.

### ii.    *Enterprise*

The RICO statute defines enterprise to include "any individual, partnership,
corporation, association, or other legal entity, and any union or group of individuals
associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-
in-fact is . . . a continuing unit that functions with a common purpose." *Boyle v. United
States*, 556 U.S. 938, 948 (2009). "To establish the existence of such an enterprise, a
plaintiff must provide both evidence of an ongoing organization, formal or informal, and
evidence that the various associates function as a continuing unit." *Odom v. Microsoft
Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (citation and quotation marks omitted).

As discussed above, the FAC alleges that by splitting Blue Cross insurance
payments, South Coast hired and compensated Sober Living Defendants, including
Pershall and RadLife, in exchange for the Sober Living Defendants targeting, coercing,
and providing patients with free housing to keep the patients in the scheme, thereby
maximizing the fraudulent billings to be split among Defendants. Sober Living
Defendants may not have directly billed Blue Cross for patients to have inpatient
treatment with South Coast, but the Sober Living Defendants began the scheme by
tracking down potential patients and helping the patients fraudulently enroll in Blue
Cross insurance, and then continuing the scheme by providing the patients with free
housing in exchange for kickbacks from South Coast. These allegations are sufficient to
allege that the Sober Living Defendants were part of a "continuing unit that functions
with a common purpose." *See Boyle*, 556 U.S. at 948.

### iii.    *RICO Conspiracy*

Pershall and RadLife argue the conspiracy claim should be dismissed because the
underlying RICO claim should be dismissed. *Pershall MTD* 26:8–12. Because the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title     Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

does not dismiss the RICO claim as noted above, the Court does not dismiss the
conspiracy claim.

####     C.     Remaining Causes of Action

Pershall and RadLife move to dismiss Plaintiff's remaining causes of action,
arguing the remaining claims are grounded in fraud and therefore fail to meet Rule 9(b).
*Id.* 26:14–19.  These arguments are substantially duplicative of the Rule 9(b) arguments
addressed above.  Therefore, the Court denies the arguments for the same reasons
addressed above.[5]

####     IV.     Motion to Dismiss by Passmore and EIE

####     A.     Shotgun Pleading

Passmore and EIE label the FAC as a "shotgun pleading" because the FAC refers
to four different Defendants as the "Body Brokering Defendants" and does not specify
whether Passmore is acting individually or on behalf of EIE.  *Passmore MTD* 12:19–
13:9.

---

[5] Pershall and RadLife assert the FAC does not sufficiently state "actual knowledge"
under Plaintiff's sixth cause of action for aiding and abetting.  *Id.* 18:21–19:16.  "Under
the Federal Rules of Civil Procedure, 'substantial assistance of the underlying fraud
"must be pleaded with particularity," while actual knowledge of the underlying fraud
"may be averred generally."'"  *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113
(S.D. Cal. 2024) (collecting cases).  The Court finds the FAC sufficiently pleads
knowledge.  The FAC states that each Defendant knew of the misconduct and
substantially assisted in it.  *FAC* ¶ 23.  The FAC provides specifics, including (but not
limited to): Pershall and RadLife purposely located and contacted patients through
substance abuse-related social media groups, promised patients free treatment from South
Coast, met often with South Coast's J.E. (a leader of the scheme) to the point patients
confused the entities, sent patients to Eisworth to fraudulently enroll in Blue Cross
insurance, allowed patients to live for free as payments continued to circulate from Blue
Cross, and accepted cash payments from South Coast (a split from the Blue Cross
insurance payments sent to South Coast) in exchange for originally finding the patients
and taking part in the scheme.  *See id.* ¶¶ 4, 11, 14, 59–71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title       Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

"Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

The FAC is not a shotgun pleading. At times, the FAC lumps different defendants into specified groups; however, "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *See United Healthcare*, 848 F.3d at 1184. Defendants' pleading theory would allow different entities to commit fraud, so long as the entities engaged in the same conduct.

  B.    <u>Fraud</u>

Like Pershall and RadLife (above), Passmore and EIE assert the FAC fails to meet the Rule 9(b) standard. The Court addresses each of their related arguments below.

  i.    *False Statements*

Passmore and EIE argue the FAC fails to allege any fraudulent statement EIE and/or Passmore made to Blue Cross because the FAC does not specify EIE and Passmore submitted insurance claims or applications to Blue Cross, or otherwise had any direct communication with Blue Cross. *Passmore MTD* 7:5–14. Passmore and EIE further argue the FAC's exhibits listing the allegedly fraudulent claims submitted to Blue Cross are not linked to EIE or Passmore. *Id.* 7:3–8:4. Plaintiff responds that the FAC need not identify false statements made by each Defendant when the entities are sued in connection with a fraudulent scheme. *Passmore Opp.* 9:4–21.

When several defendants are sued in connection with a fraudulent scheme, "there is no absolute requirement" that the "complaint must identify *false statements* made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (emphasis in original). After all, "each conspirator may be performing different tasks to bring about the desired result." *Id.* (citation omitted).

The FAC need not specify that Passmore and EIE directly communicated with Blue Cross or directly made misrepresentations to Blue Cross. The FAC instead explains the roles of Passmore and EIE in the alleged scheme, including but not limited to:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

Passmore and EIE located potential patients on social media and initiated contact with uninsured potential patients; Passmore and EIE worked to enroll the patient patients using fraudulent information including giving potential patients P.O. boxes to falsify residency requirements; Passmore coordinated over texts and encrypted communications with Eisworth to assist with fraudulent enrollments (since he had an insurance license and they did not); Passmore met routinely with South Coast's J.E. (which is how payments were distributed in cash); Passmore and EIE did not charge patients for housing; Passmore would instruct her staff to pay patient premiums to continue Blue Cross insurance coverage; Passmore would strategically move patients within the system to continue Blue Cross coverage; and Passmore would not provide patients with appropriate care (Passmore assuaged patients with "comfort meds" from an old stockpile). *FAC* ¶¶ 12–13, 15, 61–71, 84, 86, 89–93. The role of Passmore and EIE in the alleged fraud is sufficiently clear, even if that role did not include direct statements to Blue Cross.

   *ii. Connection to Eisworth*

  Passmore and EIE argue the FAC provides no allegations the Sober Living Defendants had knowledge Eisworth was falsifying insurance applications. *Passmore MTD* 8:5–9:4. Passmore and EIE acknowledge the FAC provided a specific example of a patient, Member A, who Passmore located, who Eisworth then helped falsify information to obtain Blue Cross coverage (specifically, income information), and then who stayed in EIE's sober living home operated by Passmore. *Id.* However, without citation to legal authority, Passmore and EIE argue the FAC must transcend this example and allege who specifically contacted Member A from EIE, what specifically was said to Member A, when the contact with Member A occurred, where the contact was made, and how it was made. *Id.* 8:22–9:4.

  Passmore and EIE attempt to place Blue Cross under an unattainable standard. A complaint need not provide every detail of every interaction with every individual related to an alleged scheme. The FAC alleges each Defendant knew of the misconduct in the FAC and that Passmore found and communicated with potential patients on social media groups (providing screenshots of Passmore communicating with potential patients on social media), falsified information for potential patients including mailing addresses (the FAC adds Passmore was "known to spend hours shredding mail that continued to come for former patients" to her own address because she had provided it to them for their insurance applications), and directed patients to Eisworth to complete the enrollment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

process because Eisworth had an insurance license and Passmore did not.  *FAC* ¶¶ 23,
63–71.  The Court finds this detail sufficient under Rule 9(b).

### iii.    Initiation of Contact with Potential Patients

Passmore and EIE argue the FAC does not allege facts to support its conclusion
that they initiated contact with potential patients who later enrolled in Blue Cross.
*Passmore MTD* 9:7–11:17.  Passmore and EIE attempt to discredit the screenshots
embedded in the FAC as well as the FAC's example patient "Member A."  *Id.* (arguing,
for example, that a screenshot in the FAC of text messages does not specify to whom
Passmore was texting about mailing addresses for a patient or the date/time of the text
message, and that by stating that Passmore "brokered" Member A, the FAC does not
specify Passmore specifically contacted that patient).

Although additional details should be sought in discovery, the Court finds the
FAC provides sufficient specificity as to the initiation of contact with potential patients.
For instance, in one paragraph, the FAC specifies "Passmore initiated contact" with
potential patients through "social media or word of mouth," including scouring numerous
Facebook groups where individuals discussed substance use disorder] treatment.  *FAC*
¶ 63.  Just this paragraph provides significant detail about how Passmore, in operating
EIE, contacted potential patients.

### C.    RICO

Passmore and EIE argue the FAC cannot establish an associate-in-fact enterprise.
First, Passmore and EIE argue the FAC provides three alternative formations of the
enterprise "underscor[ing] Plaintiff's own factual uncertainty about the existence of an
enterprise" and there are no facts connecting the enterprise to Defendants.  *Passmore
MTD* 12:22–13:18.  As discussed above, the Court finds the FAC sufficiently pleads an
associate-in-fact enterprise between Defendants.  Passmore and EIE fail to explain why
Plaintiff pleading smaller enterprises in the alterative of a larger enterprise would defeat
the complaint.

Second, Passmore and EIE assert that the FAC fails to allege how they
participated in the operation or management of the enterprise's affairs.  *Id.* 13:19–14:6.
However, the FAC specifies the Sober Living Defendants (including Passmore and EIE)
improperly led aspects of the scheme, including finding potential targets, sending them to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                      Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

Eisworth, working with Eisworth to falsify insurance applications, allowing individuals to live for free in their homes while Blue Cross paid insurance claims, and improperly accepting a split of the insurance payments. *See, e.g.*, *FAC* ¶¶ 9, 12–13, 57–71, 79–80, 85–86. As noted above, if Defendants intend to argue these acts are legal, they should file a motion on those grounds, rather than disputing the sufficiency of detail in the FAC.

Third, Passmore and EIE argue the FAC does not establish mail or wire fraud because there are no descriptions, names, or dates when Defendants traveled interstate or used the mail or interstate wires to further the scheme. *Id.* 14:7–17. However, the FAC explains Defendants furthered the scheme using interstate mail and wires when South Coast (a California entity) and ER (an Arizona entity) submitted insurance claim forms (specifically, CMS 1500, HFCA, and UB-04 forms) to Blue Cross (an Oklahoma entity). *FAC* ¶¶ 28, 116, Ex. B, Ex. C. The FAC provides the claim numbers, dates, procedure codes, and the individuals who submitted the claims. *Id.*

And fourth, Passmore and EIE aver that the RICO claim is time-barred because Plaintiff failed to exercise reasonable diligence in investigating Defendants' conduct, which started "at least as far back as 2020," according to the FAC. *Passmore MTD* 16:15–21:13.

A four-year statute of limitations applies to civil RICO actions. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). "To determine whether the statute of limitations has run on a civil RICO claim, the Ninth Circuit applies the 'injury discovery' rule." *Borrego Community Health Foundation v. Inland Valley Invs., LLC*, No. 21-cv-01417-AJB-AGS, 2023 WL 2518844, at *3 (S.D. Cal. Mar. 13, 2023). Pursuant to this rule, the limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). Constructive notice is established if a plaintiff "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110. Notably, a suit may only be dismissed under Rule 12(b)(6) based on the statute of limitations when "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Musuem of* Act, 592 F.3d 954, 969 (9th Cir. 2010).

Under the RICO cause of action, the FAC states the "conduct started at least as far back as 2020 and continues to this day" and "[t]he FAC deals with Defendants' acts from 2021 through the day of filing." *FAC* ¶ 108. This statement mentions Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

conduct, not injury to Plaintiff and is not enough to render the FAC time barred.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." (citation omitted)); *Borrego*, 2023 WL 2518844, at *2 ("[B]ecause the TAC, read with the required liberality, plausibly shows that the RICO claim is not time-barred, the Court declines to dismiss this claim on statute of limitations grounds." (citation omitted)); *Uce v. Oral Aesthetic Advocacy Group, Inc.*, No. CV 23-3186-CBM-MRWx, 2024 WL 3050720, at *2 (C.D. Cal. Feb. 23, 2024) (deciding the court could not dismiss plaintiff's RICO claims as time-barred at the pleading stage because it was "not clear based on the face of the Complaint" that the plaintiff's claims were barred under the statute of limitations). Moreover, the FAC provides numerous allegations indicating the Defendants' scheme would have been concealed from an investigation by Plaintiff (e.g., instead of signing up potential patients without a license, the Sober Living Defendants utilized a licensed insurance agent in Oklahoma; the Sober Living Defendants accepted cash payments to avoid tracking; Passmore, EIE, and ER spread enrollment and treatment across differently named entities in different locations to navigate around Plaintiff's fraud safeguards).  *See FAC* ¶¶ 61, 67–68, 90.

The Court finds the FAC does not raise a statute of limitations barrier on its face.

D.      Remaining Claims

Passmore and RadLife assert that the remaining causes of action (four through nine) are subject to Rule 9(b)'s pleading standard and should fail for the same reasons as the fraud claim.  *Passmore MTD* 16:13–14.  The Court need not address this argument, as it has determined the FAC meets the Rule 9(b) standard.

V.      ER's Motion to Join and Dismiss

ER filed a motion for joinder in the motion to dismiss filed by Passmore and EIE, seeking dismissal on the same grounds.  *ER MTD* 2:3–9.  The Court denies ER's motion as it is substantially based on the same grounds as the motion filed by Passmore and EIE.

The FAC details ER's role in the scheme.  The FAC provides a chart of all the false and fraudulent claims, listed by claim number, submitted by ER to Blue Cross.  *ER Spreadsheet*.  The FAC notes the individuals who signed and certified ER's claims: M.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title     Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

and L.R.  *FAC* ¶ 94.  M.C. was ER's medical director, and L.R. was an attending
provider.  *Id.*  The FAC notes Passmore is a member and part owner of ER (in addition to
EIE).  *Id.* ¶ 13.  The FAC explains ER's part in the overall scheme, including, but not
limited to: submitting healthcare claims to Blue Cross stating it provided treatment to
enrolled members even though, Passmore brokering patients to her own center, ER did
not collect required copays for treatment from patients , Passmore strategically moved
patients between ER, South Coast, and EIE houses to avoid Blue Cross's fraud detection
by creating the facade patients were being treated by distinct providers when all entities
were working together (all while not charging patients and billing Blue Cross), billing
Blue Cross for false services (e.g., ER hired former, unlicensed patients to work as
technicians and Passmore instructed staff to note group sessions had occurred when they
had not).  *See id.* ¶¶ 10, 80, 89–94.

        ER argues Blue Cross should provide additional detail.  For example, with regard
to Passmore instructing staff to document group sessions that never happened, ER avers
"the FAC does not say what Excellence obtained by inaccurately recording the time of
the sessions" and "[t]here are no facts to specify how sessions are paid out by claims to
[Blue Cross], and if the timing of the sessions somehow factors into the amount that
[Blue Cross] pays to [ER]."  *ER MTD* 7:23–8:3.  But the FAC provides the specific
allegedly fraudulent claims ER submitted to Blue Cross.  *ER Spreadsheet*.  The FAC
provides examples as to why these claims are fraudulent, including that certain group
sessions never occurred.  At the pleading stage, even under Rule 9(b), Blue Cross need
not annotate the list of fraudulent claims, specifying for each claim why that exact claim
is fraudulent.  *See Nutrishare, Inc. v. Conn. General Life Ins.*, No. 2:13-cv-02378-JAM-
AC, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014) ("When dealing with thousands
of instances, it is often the case that a complaint . . . laying out each and every
misrepresentation in detail would 'provide less effective notice and be less useful in
framing the issues than would a shorter, more generalized version.'" (citation omitted)).

        The Court finds the FAC places ER on notice of the allegations against it and
details surrounding those allegations, which is sufficient under Rule 9(b).

VI.     South Coast's Motion to Dismiss

        South Coast forwards many arguments already addressed above.  Therefore, in
this section, the Court addresses only arguments distinct to South Coast.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-10683 MWC (AJRx)                    Date: June 20, 2025

Title    Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

         i.      *"Who" Prong*

South Coast asserts the FAC fails to identify a single South Coast employee who provided kickbacks to codefendants/patients, who knew about the fraudulent enrollment of members, who falsely certified South Coast's compliance with applicable laws, or who submitted false claims. *SC MTD* 10:19–22.

However, the FAC does discuss specific individuals at South Coast, and their roles in the scheme. The FAC notes:

- J.E. and A.H. worked for South Coast and spearheaded the scheme. *FAC* ¶ 60.
- J.E. and A.H. held various job position titles while working for South Coast, including: "head of marketing," "director of business development," and/or "director of business relations." *Id.*
- J.E. and A.H. targeted Oklahoma residents for treatment. *Id.*
- J.E. and A.H. worked with a third-party marketing executive at a related treating provider (owned by the same parent company as South Coast). *Id.*
- J.E. specifically set up the scheme and was the individual from South Coast who paid the Sober Living Defendants. *Id.* ¶ 61.
- J.E. often met with Pershall and Passmore. *Id.*
- During these meetings, J.E. made payments to Pershall and Passmore in cash, so the payments would be difficult to track. *Id.*
- These meetings occurred in South Coast's main office. *Id.*
- J.E. was very close to Pershall and Passmore to the point that some patients believed they were staying at South Coast homes ("J.E.'s houses") when they were staying at sober living homes owned/operated by Pershall and Passmore. *Id.* ¶ 62.
- J.E. worked with Eisworth to falsify insurance claims for Blue Cross enrollment. *Id.* ¶ 68.
- Two other South Coast employees signed and certified the fraudulent claims sent to Blue Cross: L.T. and J.D.S. *Id.* ¶ 88.
- L.T. and J.D.S. were medical directors at South Coast. *Id.*

The Court finds the FAC satisfies Rule 9(b)'s "who" prong as to South Coast's role in the alleged fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title      Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

          *ii.*   *Factual Particularity Regarding Kickbacks and Enrollment of Blue*
              *Cross Members*

Like earlier Defendants, South Coast argues the FAC fails to provide factual
particularity regarding South Coast's role in the kickback scheme and the enrollment of
members in Blue Cross. *SC MTD* 15:15–20:16.  At times, South Coast disputes specific
facts.  For instance, South Coast contends two specific Blue Cross members (A-9745501
and B-4027101) were not provided free services, pointing to their explanation of benefits
forms. *Id.* 17:1–11.  This argument only emphasizes the specificity in the FAC and
confirms that South Coast has notice of the allegations levied against it.  Moreover, these
disputes of fact are more appropriate for summary judgment.

South Coast's role in the kickback scheme, including fraudulent enrollment of
Blue Cross members, is detailed and clear.  South Coast, a treating entity, hired the Sober
Living Defendants to find vulnerable patients in Oklahoma, enroll those patients in
desirable Blue Cross plans regardless of the patients' qualifications for the plans (so
South Coast could later bill Blue Cross for the patients' treatments), house the patients
for free with a priority bed voucher (so the patients remain in the system longer and
produce more insurance payments), and ensure the patients use South Coast for
outpatient treatment as long as possible.  *See e.g.*, *FAC* ¶¶ 9, 58, 61, 79, 80–81, 84–85.
South Coast submitted insurance claims to Blue Cross for the treatment of the
fraudulently enrolled individuals and, in exchange for the services of the Sober Living
Defendants, split the resulting insurance payments with the Sober Living Defendants
(often in a cash exchange between J.E. and Pershall/Passmore during meetings at South
Coast's main office).  *Id.*  The FAC provides a list of the allegedly false and fraudulent
claims submitted by South Coast during the scheme, including, for each entry on the list:
the patient's name, patient claim number, claim dates, procedure code, revenue code,
billed amount, paid amount, cost share amount, and provider identifier.  *SC Spreadsheet*.

The FAC provides significant detail surrounding South Coast's role in the alleged
kickback and enrollment scheme, satisfying the Rule 9(b) standard.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10683 MWC (AJRx)                          Date: June 20, 2025

Title        Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC *et al.*

VII.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |